IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

TOMMIE E. MASON                                                                                              PLAINTIFF
ADC #083024

v.                                            4:23-cv-001189-BRW-JJV

LEWIS H. YOUNG,
Warden of Operation, Cummins Unit; *et al.*                                                        DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson.  Any party may serve and file written objections to this Recommendation.  Objections should be specific and include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this Recommendation.  Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

**I.     DISCUSSION**

Tommie E. Mason ("Plaintiff") is a prisoner in the Cummins Unit of the Arkansas Division of Correction ("ADC") who has filed this *pro se* action seeking relief pursuant to 42 U.S.C. § 1983. Plaintiff says on October 20, 2023, Defendant Warden Lewis H. Young violated his equal protection rights under the Fourteenth Amendment when he issued a major disciplinary against him for an overdraft on his inmate account while not doing so against other inmates who engaged in the same behavior.  (Doc. 2.)  All other claims and Defendants have been dismissed without prejudice.  (Doc. 8.)

Defendant Young has filed a Motion for Summary Judgment arguing he is entitled to

dismissal because Plaintiff failed to properly exhaust his administrative remedies. (Docs. 28-30.) Plaintiff has filed a Response. (Doc. 34.) After careful consideration, I recommend the Motion be GRANTED, the equal protection claim against Defendant Lewis be DISMISSED without prejudice, and this case be CLOSED.

## II.     SUMMARY JUDGEMENT STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, demonstrates there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party cannot rest on mere denials or allegations in the pleadings, but instead, must come forward with evidence supporting each element of the claim and demonstrating there is a genuine dispute of material fact for trial. *See* Fed R. Civ. P. 56(c); *Celotex*, 477 U.S at 322; *Holden v. Hirner,* 663 F.3d 336, 340 (8th Cir. 2011). In this regard, a factual dispute is "genuine" if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Greater St. Louis Constr. Laborers Welfare Fund v. B.F.W. Contracting, LLC,* 76 F.4th 753, 757 (8th Cir. 2023).

## III.    DISCUSSION

### A.     The Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion

requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89–91 (2006).

The PLRA requires inmates to properly exhaust their administrative remedies as to each claim in the complaint and complete the exhaustion process prior to filing an action in federal court. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). Importantly, the Supreme Court has emphasized "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218. Thus, to satisfy the PLRA, a prisoner must fully and properly comply with the specific procedural requirements of the incarcerating facility. *Id.*

In this case, it is undisputed Plaintiff attempted to challenge his October 2023 disciplinary conviction through the ADC's Disciplinary Appeal Process found in Administrative Directive 18-34 ("AD 18-34") and the Grievance Procedure found in Administrative Directive 19-34 ("AD 19-34"). However, as will be explained, he did not do so properly in either procedure. *See Castano v. Nebraska Dep't of Corr.,* 201 F.3d 1023, 1024 (8th Cir. 2000) (PLRA's exhaustion requirement applies to a prisoner's constitutional challenges to disciplinary convictions).

**B.     AD 18-34 Disciplinary Appeal Process**

AD 18-34 establishes a three-step procedure for challenging a disciplinary conviction. (Doc. 28-5; Doc. 28-8.). First, a prisoner must appeal a major disciplinary conviction to the Warden. (Doc. 28-8 at 18; AD 18-34 § VII(H)(1).) Importantly, the policy says: "[a]ll grounds for appeal should be briefly stated and include the reasons why the conviction or punishment should be reversed or modified. This statement will be considered at all levels of appeal and may

3

not be re-written at each stage." (*Id*. at § VII(H)(2).)  Second, if the inmate is dissatisfied with the Warden's response, he or she must appeal to the Disciplinary Hearing Administrator.  (*Id*. at § VII(H)(2)(b).)  Third, if the inmate disagrees with the response, he or she must appeal to the ADC Director, which is the final step in the process.  (*Id*. at § VII(H)(2)(c).)

The following facts are undisputed.  On October 20, 2023, Defendant Young wrote a Major Disciplinary accusing Plaintiff of not having sufficient funds in his inmate account to purchase a hamburger and fries through the Inmate Council project. (Doc. 28-6 at 1.)  Specifically, Defendant Young charged him with: (1) monetary misconduct, (2) theft, (3) destruction or intentional misplacement of property, (4) lying to staff, and (5) the purchase of authorized articles through unauthorized channels. (*Id*.)  After a hearing held on October 27, 2023, the Disciplinary Hearing Officer found Plaintiff guilty of 1 and 4, and not guilty of the remaining charges.  (*Id.*)  As punishment, Plaintiff's commissary, phone, and visitation privileges were suspended for sixty days; his class was reduced; and he lost his job assignment. (*Id*.; Doc. 28-4 at 1.)

On the same day, Plaintiff appealed to the Warden.  (*Id*. at 7.)  Plaintiff's appeal said the disciplinary conviction was invalid because: (1) he did not steal any food; (2) the sentence was contrary to a May 2022 Memo from Defendant Young saying punishment for insufficient funds would be a sixty-day suspension from participation in Inmate Council Projects; and (3) ADC officials violated "standard procedures" by failing to check the balance of his account before authorizing the purchase.  (*Id*. at 7-8.; Doc. 34 at 6.)  But Plaintiff did not say, as he does in this lawsuit, the disciplinary violated his equal protection rights because he received a disciplinary conviction while other inmates did not for overdrafts from their inmate accounts. (Doc. 28-6.) The Warden, Disciplinary Hearing Officer, and ADC Director affirmed the disciplinary convictions on appeal, with the final ruling being signed on December 31, 2023.  (*Id.* at 6.)

Defendant Young argues Plaintiff violated AD 19-34 § VII(H)(2) by not including an equal protection claim in his disciplinary appeals. I agree. To properly exhaust administrative remedies, a prisoner must raise the same claim within the prison system as he does in federal court. *See Muhammad v. Mayfield*, 933 F.3d 993, 1003 (8th Cir. 2019) (improper exhaustion when the issues raised during the administrative process was a "decidedly different issue" than the ones raised in the complaint); *Townsend v. Murphy*, 898 F.3d 780, 784 (8th Cir. 2018) (improper exhaustion when a prisoner's grievance did not contain "the specific factual allegations that would later appear in his federal complaint"); *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014) (improper exhaustion when the ADC was not asked to evaluate the "distinct § 1983 claims first asserted" in the lawsuit). Because it is undisputed Plaintiff did not do so, I conclude he failed to properly exhaust his administrative remedies under AD 18-34.

Further, although Defendants do not raise the issue, exhaustion must be completed at the time the lawsuit is filed, and not when the complaint is later amended. *See Johnson*, 340 F.3d at 627; *Harris v. Kemna*, No. 05-2746, 2005 WL 3159569 (8th Cir. Nov. 29. 2005); *Tyler v. Kelley*, No. 5:17-cv-00239-JLH-JTK, 2018 WL 1528784, at *3 (E.D. Ark. Mar. 2, 2018); *Kelley v. Davis*, No. 2:22-cv-0034-DPM-ERE, 2022 WL 18359331, at n. 8 (E.D. Ark. Aug. 18, 2022). Plaintiff filed this lawsuit on December 14, 2023. (Doc. 2.) But he did not obtain a final ruling on his disciplinary appeal until December 31, 2023. (Doc. 28-6 at 8.) Thus, even if Plaintiff had mentioned an equal protection claim in his disciplinary appeals, it would not have been timely exhausted.[1]

---

[1] To the extent this conclusion goes beyond the arguments raised by Defendant, this Recommendation serves as notice and an opportunity for Plaintiff to respond by filing an Objection. *See* Fed. R. Civ. P. 56(f) (a court may grant a motion for summary judgment "on grounds not raised by a party" after "giving notice and a reasonable time to respond").

### C. AD 19-34 ADC's Grievance Process

While the analysis ends with Plaintiff's failure to properly exhaust his appeal process, Defendants also move for dismissal based on Plaintiff's failure to exhaust pursuant to AD 19-34. The parties agree Plaintiff filed only one grievance about the October 2023 disciplinary. (Doc. 28-1, Doc. 28-2, Doc. 34.) On October 23, 2023, Plaintiff filed CU-23-790 saying Defendant Young's disciplinary charges were wrongful because: (1) Plaintiff thought he would have sufficient funds in his account when the check cleared; (2) Defendant Young said in a May 2022 Memo the punishment for an insufficient check would be a sixty-day suspension from participation in the Inmate Council Project. (Doc. 28-4 at 1.) Again, Plaintiff did not say, as he does in this lawsuit, there was an equal protection violation. Further, prison officials at all three steps refused to address the merits of any claims Plaintiff raised in CU-23-790 because disciplinary matters cannot be challenged in the grievance process. (*Id.*; Doc. 28-2 at § III(H)(5).) For these reasons, I conclude Plaintiff did not properly exhaust his equal protection claim in CU-23-790. *See Woodford*, 548 U.S. at 90 (administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits").

### D. Unavailability

That, however, does not end the analysis because the PLRA only requires prisoners to exhaust "available" administrative remedies. 42 U.S.C. § 1997e(a). Administrative remedies are "unavailable" if, for instance: (1) the grievance procedure "operates as a dead end;" (2) the procedure is "so opaque that it becomes . . . incapable of use;" or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 642 (2016); *see also Townsend,* 898 F.3d at 783. Plaintiff has not presented any argument or evidence demonstrating administrative remedies were

unavailable for him to properly and timely exhaust his equal protection claim against Defendant Young. Accordingly, Defendant Young is entitled to summary judgment. *See Jones,* 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

That being said, I realize Plaintiff may perceive my exhaustion findings as an unfairly technical "gotcha" mechanism to keep him out of court. To the contrary, the Eighth Circuit has explained the critical role the exhaustion requirement plays in the remedy process as follows:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Johnson*, 340 F.3d at 626-27.

## IV. CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1. The Defendant's Motion for Summary Judgment (Doc. 28) be GRANTED, Plaintiff's equal protection claim against Defendant Young be DISMISSED without prejudice, and this case be CLOSED.

2. The Court certify, pursuant to 28 U.S.C. 1983, that an *in forma pauperis* appeal from an Order adopting this Recommendation and the accompanying Judgment would not be taken in good faith.

Dated this 8th day of May 2024.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE